Mikhail Usher, Esq.
USHER LAW GROUP, P.C.
1600 Sheepshead Bay Rd, Ste 203
Brooklyn, New York 11235
(Phone) (718) 484-7510 (Fax) (718) 865-8566

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PAUL UDLER,

Plaintiff,

-against-

THE CITY OF NEW YORK; NYPD POLICE OFFICER MOHAMMED K. SUDDAH, Shield No.: 23521; and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN

Defendants,
----------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL DEMANDED

Case No.: 1:26-cv-02454

Plaintiff PAUL UDLER, by and through undersigned counsel, for this Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages arising out of one or more violations of federal and state law, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The action arises from an unjustified traffic-stop escalation and police beating that occurred on February 21, 2025, in Brooklyn, New York, when NYPD officers stopped Plaintiff, physically assaulted him after he sought an explanation for a summons, caused him to lose consciousness, and then detained him without lawful justification.

3. As a result of Defendants' conduct, Plaintiff was punched in the face and head, knocked unconscious, handcuffed, transported to the precinct, and later taken to the hospital, where he

required laceration repair, stitches, and diagnostic imaging. Plaintiff sustained painful physical injuries, emotional and psychological trauma, and other damages.

4. Plaintiff seeks monetary damages against Defendants, as well as an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's related New York State law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

## VENUE

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Kings County, New York, which is within this District.

## CONDITIONS PRECEDENT TO STATE-LAW CLAIMS

8. Plaintiff timely filed a Notice of Claim with the Office of the New York City Comptroller on April 4, 2025, and the claim was assigned Claim Number 2025PI013342.

9. A statutory hearing pursuant to General Municipal Law § 50-h was conducted on September 30, 2025.

10. More than thirty days have elapsed since the filing of the Notice of Claim, and the claim has not been adjusted or paid. This action is commenced within one year and ninety days of the occurrence as to Plaintiff's state-law claims.

## PARTIES

11. Plaintiff, Paul Udler, is a resident of the State of New Jersey and is otherwise sui juris.

12. Defendant THE CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York and is responsible for the policies, practices, supervision, training, discipline, and conduct of members of the New York City Police Department.

13. Defendant NYPD Police Officer Mohammed K. Suddah, Shield No. 23521, Tax Registry No. 975375, was at all relevant times a police officer employed by the NYPD, acting under color of state law and within the scope of his employment.

14. Defendants NYPD Police Officers John and Jane Does 1-10 were at all relevant times police officers or other employees of the NYPD acting under color of state law and within the scope of their employment. Plaintiff does not presently know their true names and shield or tax numbers and sues them under fictitious names pending discovery.

15. At all relevant times, each individual Defendant acted under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and the City of New York.

## STATEMENT OF FACTS

16. On February 21, 2025, Plaintiff was lawfully operating his vehicle, a Toyota Camry, northbound, on Ocean Avenue in Brooklyn, New York, after having come to Brooklyn for work-related purposes, including to see a student as part of his work as a registered behavioral therapist.

17. The incident occurred in the vicinity of Ocean Avenue and Avenue K in Brooklyn, New York.

18. During that time, NYPD officers made a U-turn, activated their lights and sirens, approached Plaintiff from behind, and initiated a traffic stop of Plaintiff's vehicle.

19. After stopping Plaintiff, the officers focused on the appearance of his vehicle, including the license plate and windows, rather than on the manner in which he was driving, and kept him waiting in his car for more than twenty minutes.

20. Plaintiff provided his driver's license and registration. The officers eventually issued Plaintiff a summons for reckless driving. Plaintiff provided his driver’s license and registration, and the officers eventually issued Plaintiff a summons for reckless driving. On the face of the summons issued by Defendant Suddah (Summons No. 4466455768), Defendant Suddah recorded Plaintiff’s statement, in substance, as: “WHAT YOU PULL ME OVER FOR.” After Defendant Suddah handed Plaintiff the summons, Plaintiff asked for clarification regarding the basis for the charge. In response, instead of issuing any lawful order, Defendant grabbed Plaintiff by the shoulder, turned him around, and shoved him back toward Plaintiff’s vehicle.

21. Plaintiff then moved his vehicle into a nearby parking space so as not to obstruct traffic. He thereafter addressed the officers from the sidewalk side, questioned the basis for the summons and the force that had just been used against him, and did not threaten or physically interfere with them.

22. One or more of the individual Defendants stepped out of the police vehicle in a threatening manner, got into Plaintiff's face, shoved him backward, grabbed him, and repeatedly punched him in the face and head.

23. The force used against Plaintiff was objectively unreasonable, unnecessary, and grossly disproportionate to any legitimate law-enforcement need.

24. Plaintiff did not pose an immediate threat of harm that would justify the level of force used against him.

25. As the assault continued, Plaintiff backed away and attempted to disengage, but was chased, fell, was struck from behind, and lost consciousness. At all relevant times during this

sequence, Plaintiff kept his hands visible and in front of him, verbally requested that the officers back away, and took no action in resistance or aggression toward the officers. The strike that rendered Plaintiff unconscious was delivered from behind while Plaintiff was in the process of retreat, and at no time did Plaintiff pose an articulable threat to any officer's safety.

26. While Plaintiff was on the ground and after he began regaining consciousness, the individual Defendants continued to strike him, applied pressure to his back and neck, and then placed him in handcuffs. Specifically, Defendants ordered Plaintiff to show his hands while simultaneously applying pressure to his back and neck that pinned Plaintiff's hands beneath his body, rendering compliance with that order physically impossible. Defendants continued to strike Plaintiff from behind while maintaining that pressure, thereby creating the very non-compliance upon which they then purported to rely as justification for continued force.

27. As a result of the assault, Plaintiff sustained visible injuries, including, but not limited to, a gash to the inside of his mouth, bruising under his right eye, swelling to his nose, bruising on his forehead, bruising behind his right ear, and bruising to both sides of his face.

28. Plaintiff was not informed why he was being handcuffed or taken into custody at the time force was used and restraints were applied. Plaintiff was placed in a police vehicle and transported to the 70th Precinct, where he was processed and held in a cell.

29. Only after Plaintiff had been handcuffed and stood up did the officers ask whether he had anything on his person, at which time Plaintiff disclosed that he had a legal knife.

30. While held in the cell, Plaintiff requested medical attention and was forced to wait before receiving it.

31. Medical records from that visit reflect that Plaintiff was seen on February 21, 2025, for injuries following a physical assault, including a laceration of the floor of his mouth, headache,

and neck pain. The treatment included laceration repair and diagnostic imaging, including CT studies.

32. Plaintiff has also undergone physical therapy and mental-health counseling as a result of the incident and continues to suffer trauma, fear of police, and related authority issues stemming from the assault.

33. The criminal charges arising from the incident were adjourned in contemplation of dismissal on February 22, 2025, and were thereafter dismissed and sealed on August 21, 2025.

34. At all relevant times, the individual Defendants had a realistic opportunity to prevent the unlawful seizure, beating, and continued use of force against Plaintiff, but failed to do so.

35. The actions of the individual Defendants were intentional, malicious, reckless, and undertaken with callous disregard for Plaintiff's clearly established rights.

36. At all relevant times, Plaintiff Paul Udler is and was a Jewish man who actively observes his faith. On the day of the incident, Plaintiff was traveling in his vehicle with religious articles, including his siddur (Jewish prayer book) and other articles of religious and ceremonial significance to him as a practicing Jew.

37. Following the assault described above, and after Plaintiff had been handcuffed and removed from his vehicle, the individual Defendants took custody of, searched, and otherwise had unrestricted physical access to the interior of Plaintiff's vehicle and his personal property. Upon information and belief, during and/or after that search, the individual Defendants intentionally ransacked Plaintiff's religious articles, strewing his siddur and other items of religious significance about the interior of the vehicle and leaving them in a state of deliberate disarray.

38. Upon information and belief, Defendants' treatment of Plaintiff's religious articles was not incidental to any legitimate inventory or investigatory purpose.

**Additional Facts Surrounding Liability**

39. Upon information and belief, the constitutional violations inflicted on Plaintiff were caused, in whole or in part, by policies, practices, customs, usages, failures to train, failures to supervise, failures to discipline, and/or failures to intervene attributable to Defendant THE CITY OF NEW YORK.

40. Upon information and belief, prior to the incident described herein, the CITY OF NEW YORK was on notice of complaints and claims involving excessive force, unlawful arrests, and failures to provide prompt medical attention by NYPD officers, yet failed to take adequate corrective action.

41. Upon information and belief, the CITY OF NEW YORK maintained practices that were deliberately indifferent to the constitutional rights of persons stopped, seized, and arrested by NYPD officers, including inadequate training and supervision concerning the use of force, de-escalation, reporting requirements, and intervention by fellow officers.

42. Discovery is expected to reveal, among other things, body-worn camera footage, disciplinary histories, civilian complaints, use-of-force records, command logs, and other materials further evidencing the customs, policies, and practices that caused Plaintiff's injuries.

43. Upon information and belief, the pattern and practice of excessive force within the NYPD is widely documented and has been the subject of recent and detailed public findings. In its September 2025 report, *A Blueprint for Department-Wide Restraint: An Analysis of NYPD Excessive Force Complaints, Claims, and Lawsuits*, the Office of the New York City Comptroller found, inter alia, that: (a) in Fiscal Year 2025, “Police Action” claims—including those involving excessive or unnecessary force—were the single most common category of tort claims filed against the City of New York, with 6,082 claims filed and over $113 million paid out in settlements; (b) the number of individual allegations of excessive or unnecessary force submitted to the Civilian

Complaint Review Board ("CCRB") jumped by approximately fifty-seven percent (57%) between 2022 and 2023, and rose again in 2024 to 7,080 allegations; and (c) sixteen NYPD precincts experienced an increase of fifty percent (50%) or greater in average annual CCRB complaints of excessive or unnecessary force, resulting in approximately $8.9 million in related settlements between 2019 and 2024.

44. Upon information and belief, the 70th Precinct, where the individual Defendants were assigned and to which Plaintiff was transported following his unlawful seizure, has a long and well-documented history of civil-rights abuses. This history includes, without limitation: (a) the 1997 torture and sexual assault of Abner Louima inside a 70th Precinct stationhouse by NYPD officers, which resulted in a civil settlement of approximately $8.7 million against the City of New York and related parties; and (b) the 2013 in-custody death of Kyam Livingston following her arrest by officers of the 70th Precinct and subsequent processing through Brooklyn Central Booking. Upon information and belief, notwithstanding these high-profile incidents, Defendant THE CITY OF NEW YORK failed to implement sufficient training, supervision, disciplinary, or corrective measures within the 70th Precinct to prevent further constitutional violations of the type inflicted upon Plaintiff.

45. Upon information and belief, Defendant NYPD Police Officer Mohammed K. Suddah, assigned to the 70th Precinct, has been the subject of multiple prior complaints filed with the CCRB. Upon information and belief, two (2) of those CCRB matters are classified as "closed pending litigation," reflecting that related litigation arose from prior on-duty conduct. At least one such CCRB complaint was lodged against Officer Suddah in or about June 2024, less than nine (9) months before his assault upon Plaintiff. Upon information and belief, notwithstanding this prior complaint history, the CITY OF NEW YORK failed to take meaningful disciplinary,

retraining, supervisory, or corrective action as to Officer Suddah, thereby ratifying his conduct and rendering the constitutional violations alleged herein reasonably foreseeable.

46. Upon information and belief, NYPD Patrol Guide Procedure No. 221-01 ("Force Guidelines") requires uniformed members of the service to utilize de-escalation techniques when appropriate and to use only the force reasonably necessary to gain compliance, control, or custody of a subject, and NYPD policy requires the preparation of a Threat, Resistance or Injury ("TRI") Report following reportable uses of force. However, as set forth in the October 2015 report of the Office of the Inspector General for the NYPD (Department of Investigation), titled *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices*, the NYPD historically failed to adequately define "force" and "excessive force," failed to maintain uniform force-reporting requirements, failed to meaningfully train officers on de-escalation, and frequently failed to ensure consistent discipline for use-of-force violations. Upon information and belief, these systemic deficiencies persisted as of February 21, 2025 and were a moving force behind the constitutional violations inflicted on Plaintiff.

47. Upon information and belief, the CITY OF NEW YORK, through the Office of the Police Commissioner and the NYPD's internal disciplinary machinery, has maintained policies, customs, or practices reflecting deliberate indifference to excessive-force misconduct by NYPD officers. By way of example, on or about August 15, 2025, NYPD Police Commissioner Jessica Tisch reversed the decision of the NYPD Deputy Commissioner of Trials, who had found Lieutenant Jonathan Rivera guilty of Assault in the First Degree in connection with an on-duty shooting and had recommended termination, thereby permitting Lieutenant Rivera to remain employed. Upon information and belief, this and related disciplinary practices encouraged, ratified, or were deliberately indifferent to officer misconduct of the very type alleged in this Complaint.

48. The aforesaid policies, practices, customs, usages, failures to train, failures to supervise, failures to discipline, and failures to intervene of Defendant THE CITY OF NEW YORK were the moving force behind, and directly and proximately caused, the constitutional and other injuries inflicted upon Plaintiff on February 21, 2025.

**COUNT I – 42 U.S.C. § 1983 – EXCESSIVE FORCE**
**(AGAINST DEFENDANT NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

49. Plaintiff re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 48 as if set forth fully herein, and further states as follows:

50. This cause of action is brought by Plaintiff against Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN for their use of excessive force under color of state law which deprived Plaintiff of his constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution.

51. At all times material, Plaintiff had the constitutional right to be free from the use of excessive force against his person.

52. Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN violated 42 U.S.C. § 1983 by inflicting serious personal injury upon Plaintiff that was grossly disproportionate to the force necessary to arrest Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

53. Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN, while acting in their

capacity as police officers for Defendant THE CITY OF NEW YORK and under the color of state law, did intentionally use excessive force by repeatedly striking Plaintiff while restraining Plaintiff and after Plaintiff was already restrained in handcuffs at times when Plaintiff posed no immediate threat and was not resisting.

54. As a direct and proximate result of the illegal acts of Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN, Plaintiff has been damaged, including but not limited to loss of income and future earning capacity, as well as permanent physical injuries which were caused, activated or otherwise aggravated by the subject incident, and Plaintiff shall incur further medical losses and impairments in the future.

55. As a direct and proximate result of the illegal acts of Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN, Plaintiff has in the past and will in the future undergo painful and extensive medical care, treatment, has in the past incurred and will in the future incur medical bills and expenses attendant to his aforesaid injuries.

56. As a direct and proximate result of the illegal acts of Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN, Plaintiff has in the past and will in the future suffer great pain and suffering, both physical and mental anguish, as well as shame, humiliation, and the loss of capacity for the enjoyment of life.

**COUNT II – 42 U.S.C. § 1983 – FAILURE TO INTERVENE**
**(AGAINST DEFENDANTS NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

57. Plaintiff re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 56 as if fully set forth herein.

58. At all relevant times, each of the individual officer Defendants observed and/or had reason to know that excessive force was being used against Plaintiff and had a realistic opportunity to intervene to prevent the harm.

59. Despite that opportunity, each of the individual officer Defendants failed to take reasonable steps to stop the unlawful use of force and unlawful detention described above.

60. By reason of the foregoing, Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN, are liable to Plaintiff under 42 U.S.C. § 1983 for failure to intervene.

61. As a direct and proximate result of that failure to intervene, Plaintiff sustained the injuries and damages set forth above.

**COUNT III – 42 U.S.C. § 1983 – MUNICIPAL LIABILITY (MONELL)**
**(AGAINST DEFENDANT THE CITY OF NEW YORK)**

62. Plaintiff re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 61 as if fully set forth herein.

63. This cause of action is brought by Plaintiff against Defendant THE CITY OF NEW YORK for deprivation, by its agents, servants, and employees, of constitutional rights within the meaning of 42 U.S.C. § 1983.

64. The constitutional deprivations suffered by Plaintiff were caused by the customs, policies, usages, practices, failures to train, failures to supervise, failures to discipline, and failures to intervene of Defendant THE CITY OF NEW YORK, including those described above.

65. Defendant THE CITY OF NEW YORK was deliberately indifferent to the constitutional rights of persons stopped, seized, and arrested by NYPD officers, including Plaintiff.

66. As a direct and proximate result of the unconstitutional policies, customs, and practices of Defendant THE CITY OF NEW YORK, Plaintiff sustained the injuries and damages described herein.

**COUNT IV – 42 U.S.C. § 1983 – FALSE ARREST / FALSE IMPRISONMENT**
**(AGAINST DEFENDANTS NYPD POLICE OFFICER MOHAMMED K. SUDDAH AND NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

67. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 66 as if fully set forth herein.

68. At all relevant times, Defendants NYPD Police Officer Mohammed K. Suddah and NYPD Police Officers John and Jane Does Numbers One Through Ten intentionally and unlawfully seized, handcuffed, arrested, and detained Plaintiff without probable cause or other lawful justification.

69. Plaintiff was not informed why he was being handcuffed or taken into custody at the time force was used and restraints were applied, and he was transported to the 70th Precinct, where he was processed and held in a cell.

70. By reason of the foregoing, Defendants NYPD Police Officer Mohammed K. Suddah and NYPD Police Officers John and Jane Does Numbers One Through Ten violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

71. As a direct and proximate result of the foregoing, Plaintiff sustained the injuries and damages described herein.

**COUNT V – 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION**
**(AGAINST DEFENDANTS NYPD POLICE OFFICER MOHAMMED K. SUDDAH AND NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

72. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 71 as if fully set forth herein.

73. At all relevant times, Plaintiff had a clearly established right under the First Amendment to the United States Constitution to engage in speech critical of on-duty police officers concerning matters of public concern, including the basis for a traffic stop and the officers' exercise of their public authority.

74. Plaintiff engaged in protected First Amendment speech when he (a) asked Defendants why he had been pulled over (as memorialized in Defendant Suddah's own handwriting on the sworn summons: "WHAT YOU PULL ME OVER FOR"); and (b) verbally criticized Defendants' conduct as public servants, stating in substance that the officers lacked the authority to falsify tickets or to use unjustified force against citizens.

75. In direct response to and as retaliation for Plaintiff's protected speech, and with no lawful or articulable justification, Defendants took adverse action against Plaintiff, including but not limited to: physically grabbing and shoving him; exiting their vehicle in a threatening manner; punching and striking him in the face and head; chasing him; striking him from behind and causing him to lose consciousness; continuing to strike him while he was on the ground and unable to comply with contradictory orders; handcuffing and arresting him without probable cause; and causing criminal charges to be filed against him.

76. Defendants' adverse actions would chill a person of ordinary firmness from continuing to engage in the protected speech. Plaintiff's protected speech was a substantial and motivating factor in Defendants' decision to use force, seize, arrest, and charge Plaintiff.

77. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff sustained the injuries and damages described herein, including physical injury, loss of liberty, pain and suffering, humiliation, and emotional distress. Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendments to the United States Constitution.

**COUNT VI – STATE LAW ASSAULT AND BATTERY**
**(AGAINST DEFENDANTS NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

78. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 77 as if fully set forth herein.

79. On February 21, 2025, Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN intentionally and unlawfully grabbed, struck, punched, and battered Plaintiff without his consent and against his will.

80. The conduct of Defendants NYPD POLICE OFFICER MOHAMMED K. SUDDAH and NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN constituted assault and battery under the laws of the State of New York.

81. As a direct and proximate result of said acts, Plaintiff sustained physical injuries, pain and suffering, emotional distress, humiliation, medical expenses, and other damages.

**COUNT VII – RESPONDEAT SUPERIOR**
**(AGAINST DEFENDANT THE CITY OF NEW YORK)**

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 81 as if fully set forth herein.

83. At all relevant times, Defendants NYPD Police Officer Mohammed K. Suddah and NYPD Police Officers John and Jane Does Numbers One Through Ten were employees, agents, and/or

servants of Defendant THE CITY OF NEW YORK and were acting within the course and scope of their employment.

84. By reason of the foregoing, Defendant THE CITY OF NEW YORK is vicariously liable under the doctrine of respondeat superior for the assault and battery, false arrest, and false imprisonment committed against Plaintiff.

85. As a direct and proximate result of the foregoing, Plaintiff sustained the injuries and damages alleged herein.

**<u>COUNT VIII – NEW YORK STATE LAW – FALSE ARREST / FALSE IMPRISONMENT</u>**
**(AGAINST DEFENDANTS NYPD POLICE OFFICER MOHAMMED K. SUDDAH AND NYPD POLICE OFFICERS JOHN AND JANE DOES NUMBERS ONE THROUGH TEN)**

86. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in Paragraphs 1 through 85 as if fully set forth herein.

87. Under the common law of the State of New York, a claim for false arrest and false imprisonment lies where: (i) the defendant intended to confine the plaintiff; (ii) the plaintiff was conscious of the confinement; (iii) the plaintiff did not consent to the confinement; and (iv) the confinement was not otherwise privileged.

88. Defendants NYPD Police Officer Mohammed K. Suddah and NYPD Police Officers John and Jane Does Numbers One Through Ten intentionally seized, handcuffed, placed into a police vehicle, transported to the 70th Precinct, and confined Plaintiff against his will, without probable cause or other lawful privilege.

89. Plaintiff was at all times conscious of his confinement and did not consent to it.

90. At no time did Plaintiff engage in conduct giving rise to probable cause or other lawful justification for his seizure, arrest, or continued detention.

91. As a direct and proximate result of the foregoing, Plaintiff sustained the injuries and damages described herein, including loss of liberty, physical injury, pain and suffering, humiliation, and emotional distress.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

a. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

b. Awarding Plaintiff punitive damages against the individual Defendants in an amount to be determined at trial;

c. Awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

d. Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law; and

e. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable under the law.

Dated: April 24, 2026
Brooklyn, New York

Respectfully submitted,

Mikhail Usher
_______________________________

**MIKHAIL USHER, ESQ.**
Attorneys for Plaintiff
**Usher Law Group, P.C.**
1600 Sheepshead Bay Rd, Ste 203
Brooklyn, New York 11235
Ph: (718) 484-7510
Fx: (718) 865-8566